[Civ. No. 11366. First Appellate District, Division One.—January 9, 1941.]

HENRY ATHERLEY, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

Wm. M. Abbott, Cyril Appel and Ivores R. Dains for Appellants.

Henry C. Clausen for Respondent.

PETERS, P. J.—From a judgment for $3,422.38 in favor of plaintiff, defendants Market Street Railway Company, Chester Von Boden and John Berry prosecute this appeal. The injuries forming the basis of the action were received

some time after 8:00 P. M. on August 7, 1936, while plaintiff was attempting to board a southbound Fillmore Street streetcar at the northwest corner of Fillmore and Ellis Streets in San Francisco. The streetcar was operated by defendant company, and in charge of the two individual defendants. The case was tried before the court without a jury.

On this appeal defendants contend that the only possible interpretation of the evidence is that the plaintiff was injured while attempting to board a moving streetcar in violation of a city ordinance, and, hence, was guilty of contributory negligence as a matter of law, and that the trial court erred in denying defendants' motion for a new trial on the ground of newly discovered evidence. Neither of these contentions is sound. So far as the defendant company, and the defendant Von Boden, the conductor of the streetcar, are concerned, the evidence amply supports the finding that plaintiff was injured when the streetcar negligently was started while plaintiff was attempting to board it. It is true that there is a conflict, but that conflict was resolved by the trial court.

Plaintiff was seventy-seven years of age in August of 1936, and was then employed by a steamship company as a special policeman at its docks. Some years before this accident his leg had been broken in two places causing him to move slowly, and preventing him from running. The accident occurred on his day off. On that day he had attended an afternoon movie, and then had dinner at the home of his son, Walter Atherley, husband of Gertrude Atherley. After dinner, plaintiff, his son, and his daughter-in-law took a streetcar to Fillmore Street where the plaintiff desired to do some shopping. They first visited a beer parlor where they all had one glass of beer. This was the only liquor the plaintiff or his daughter-in-law had that day. This was about 7:00 o'clock in the evening. Thereafter, the son went home, leaving the plaintiff and Gertrude Atherley to continue their shopping expedition. They shopped until about, or after, 8:00 o'clock, when plaintiff decided to take a streetcar home. He and his daughter-in-law stood on the northwest corner of Fillmore and Ellis Streets awaiting the arrival of a southbound car. On that corner is a drugstore with an entrance on Fillmore Street. The drugstore extends along Fillmore Street about thirty feet from the corner, and the entrance thereto is in the middle. The actual doors to the drugstore,

according to a diagram inserted in appellants' brief, are seven feet, ten inches, wide. However, the diagram also shows that the entrance is a widely tapering one, fanning out so that where it meets the sidewalk it is fifteen or sixteen feet wide. The plaintiff testified that he and his daughter-in-law stood, waiting for the car, "just about the entrance to the drugstore." Both he and Gertrude Atherley testified that, when the southbound streetcar arrived, the plaintiff proceeded straight out in the street to board it; that Gertrude Atherley stood at the curb to watch him board the car; that there were two or three passengers preceding the plaintiff; that after these other passengers boarded the car, and while the car was still at a standstill, the plaintiff placed his foot on the lower step and was reaching for the stanchion when the car started with a sudden jerk, throwing the plaintiff to the street. Plaintiff suffered a skull fracture, which almost completely encircled his head at the level of his eyes, concussion, head abrasion and nervous shock. The injury caused permanent deafness in one ear, and recurring dizziness. No contention is made that the amount of the judgment is excessive.

According to the testimony of defendant Chester Von Boden all passengers were on the streetcar when he gave the signal to the motorman to proceed. He testified that he first observed the plaintiff between two automobiles parked on the west curb of Fillmore Street; that plaintiff stepped out into the street and attempted to grab the car as it went by; that plaintiff did not get his foot on the step or his hand on the stanchion; that the streetcar hit him on the left shoulder, and, as a result, he was thrown against one of the parked automobiles. There was no evidence that plaintiff had a bruised shoulder after the accident.

Fred Harr, a newsboy with a stand on the southwest corner of the intersection (the accident happened at the northwest corner) testified that he saw plaintiff lunge for the streetcar after it was in motion; that at the moment of the accident he was in the street, having just sold a paper to a customer in an automobile, and that he was looking northerly to see if his boss was coming with more papers for him.

Faced with this direct conflict in the evidence, the trial court resolved the conflict in favor of plaintiff, and made its findings accordingly. That was its function. It is no part of the function of this court to weigh that evidence.

Appellants, however, argue that the physical circumstances of the accident as testified to by respondent and his daughter-in-law demonstrate, as a matter of law, that he attempted to board the streetcar while it was in motion. Appellants arrive at this conclusion, which is directly contrary to the evidence of respondent above recited, by taking a few isolated statements from respondent's and Gertrude Atherley's testimony, by completely disregarding other portions of their testimony which tend to explain the portions relied upon by appellants, by then applying a yardstick to the isolated portions of the testimony chosen by them, and then demonstrating, as they contend, to a mathematical certainty, that respondent must have attempted to board the streetcar after it started up. Thus, they refer to the testimony of the respondent that the streetcar stopped with its front end at the north property line of Ellis Street; that he was standing in front of the entrance to the drugstore; that after the car had stopped he walked straight out into Fillmore Street to board the car at the rear platform; that no one was standing between him and the conductor as he attempted to get on the car. His daughter-in-law also testified that he did not walk at an angle. It is also contended that respondent testified that he did not proceed out into the street until after the car had stopped. Using this testimony as their major premise, and, assuming that from that testimony the only inference is that respondent attempted to board the car opposite the entrance to the drugstore, appellants contend that when the rear platform of the streetcar was opposite the drugstore entrance it had to be moving—*ergo,* say they, the respondent attempted to board a moving streetcar. In support of this argument appellants have included in their opening brief diagrams based on undisputed measurements with the purpose of showing that, with the car stopped with its front end along the north property line of Ellis Street, the rear of the car would be some feet north of the drugstore, and that respondent could not possibly reach the rear entrance by walking straight out into the street from his position at the entrance of the drugstore.

This argument is not only unfair to respondent, in that it attempts to reduce the testimony of respondent and Mrs. Atherley to feet and inches when their testimony as to places and distances was obviously an approximation, but it completely disregards other more explicit testimony given by

these witnesses. As already pointed out, the entrance to the drugstore is a wide, tapering one. Respondent testified that before the streetcar arrived, "The place where my daughter-in-law and I were standing was just about the entrance to the drugstore", and again, "I was standing on the sidewalk in front of the entrance to the drugstore, . . . ". The north line of this entrance where it meets the sidewalk would be about twenty feet south of the rear entrance of the street-car, if it stopped with its front fender along the north property line of Ellis Street. Respondent did not testify that he proceeded out into the street after the car had stopped. It is true that respondent testified that, "I was standing on the sidewalk when the car came down there and stopped; I shook hands with my daughter-in-law and went out toward the streetcar." But this general testimony was fully explained by the more explicit testimony of respondent that other people were waiting out in the street to get on the car before it came to a stop; that, "I had waited some fraction of time with those other people. I stood on the sidewalk there, and after I left the sidewalk I went over and stood with these people on the street until she came to a standstill." Gertrude Atherley testified that respondent was "standing there with" the other passengers waiting to get on. Although it is true that plaintiff and Mrs. Atherley testified that respondent walked straight out into Fillmore Street and did not proceed at an angle, he did not testify, as claimed by appellants, that he boarded the car directly in front of the entrance of the drugstore. His testimony, when read as a whole, was to the effect that he walked straight out into Fillmore Street and waited with the other passengers. Then, when the car stopped, he turned and walked a few yards north to the rear entrance of the streetcar. Thus, after testifying that he walked straight out into Fillmore Street and stood waiting with the other passengers, he stated: "I had to step a few yards in front of the drugstore to go to the end of the car . . . I went straight over to the car, and the place where I intended to board that streetcar was at the rear end. You might have to walk five yards to get onto the back of the car." He also testified that the rear end of the streetcar was not in front of the entrance of the drugstore, but that, "The rear end of it just goes beyond that drugstore. Then you have to step up two or three yards to get onto it, . . . The place where the

rear end of the streetcar was when it was stopped was up about north of the building line of the drugstore there." According to appellants' own computations, the rear entrance of the streetcar, if the car stopped exactly with the edge of its front fender along the north property line of Ellis Street, would be but twelve feet north of the property line of the drugstore. This corresponds very closely with respondent's testimony.

Enough has been stated to demonstrate that appellants' contentions on the point under discussion are without merit. They are based on an unwarranted and unfair interpretation of the evidence. The language of the Supreme Court in *Albaugh* v. *Mt. Shasta Power Corp.*, 9 Cal. (2d) 751, at p. 773 [73 Pac. (2d) 217], is peculiarly applicable here. It was there stated: "Before directly discussing this subject, [sufficiency of the evidence], it should be pointed out that appellant on this point, as well as on several of the other points already discussed, has disregarded the rules of law applicable to appellate procedure. Appellant by argument based on its view of the evidence, by disregarding conflicting evidence and by the contention that certain adverse evidence has been 'completely destroyed', in its briefs makes a quite convincing showing on this issue. Of course, the jury is the sole judge of the effect, sufficiency, and weight of the evidence, and the sole judge of the credibility of the witnesses. Whatever our opinion may be as to the weight of the evidence, if there is material, credible evidence to support the verdicts, this court is without power to disturb them. As was said in *Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427, 429 [45 Pac. (2d) 183] : 'In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked, principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury.' These principles are elementary."

█ Appellants also urge that the testimony of respondent and of Mrs. Atherley is unworthy of belief because of their alleged alcoholic condition. It is to be noted that this contention is not that respondent was guilty of contributory

negligence in being intoxicated, but that, because of his condition, he did not know what had happened, and, consequently, his testimony cannot support the judgment in his favor.

Respondent testified that he had one glass of beer about an hour before the accident, and that he had had no other liquor that day. Mrs. Atherley testified that she had one glass of beer with respondent, and that was all the liquor she had had that day. Dr. Milton B. Lennon examined respondent on the night of the accident, after he had been removed from the Central Emergency Hospital to St. Mary's Hospital. He was most emphatic in stating that there was no evidence of intoxication at the time of his examination; that in examining respondent's head and eyes he did not notice an alcoholic breath; that, considering the extent and nature of the injuries, respondent talked remarkably well. The doctor testified that he made this examination, at most, within three hours of the accident. On their motion for a new trial appellants produced the affidavit of the Record Librarian at St. Mary's Hospital to the effect that the records of that hospital show that respondent was not received there until 11:40 P. M. It is urged that, if the accident happened at 8:00 P. M., or shortly thereafter, as respondent testified, it was more than three hours later when Dr. Lennon examined him. It should be mentioned that all of the witnesses testified that the accident happened "about" or "after" 8:00 P. M. The accident report of Officer Charles S. Denike gives the time of the accident as 8:30 P. M. This is also the time fixed by Fred Harr, appellants' witness. He states it was "about somewhere between eight and eight-thirty in the evening"; that the reason he was looking north at the time of the accident was because he was looking for his boss who always "is due to come down at 8:30". The report of the Emergency Hospital shows that respondent was received there at 8:50 P. M. Obviously, the evidence shows the accident occurred some time close to 8:30 P. M. Under such circumstances, the slight error in Dr. Lennon's testimony is immaterial.

On behalf of appellants, Dr. William A. Sumner, who treated respondent at the Central Emergency Hospital, testified that he noted on the official record made by him at that time that respondent was "alcoholic" when he arrived there.

He also testified that from independent recollection the respondent was alcoholic.

It would seem quite clear that on the issue of the sobriety of the respondent there is a direct conflict. That was a question peculiarly and entirely for the trial court. Certainly, it cannot be said, as a matter of law, that respondent was so intoxicated that his testimony that the car was at a standstill must be disregarded.

█ As further tending to indicate the unreliability of respondent's testimony, appellants make much of the fact that in the original complaint, and in his deposition, respondent stated that the accident happened at *Eddy* and Fillmore Streets, while the evidence shows that it happened at Ellis and Fillmore Streets. However, the record also shows that the day after the deposition was taken, counsel for respondent notified counsel for appellants, by letter, of the error in the complaint and deposition, and requested a stipulation that the complaint could be amended. Appellants' counsel did not stipulate, but the complaint was later properly amended and the deposition properly corrected before the trial. The argument of appellants on this point is without any sound foundation.

█ In support of their motion for a new trial on the ground of newly discovered evidence, appellants offered the affidavit of Officer Denike that he arrived at the scene of the accident in a police radio car, before respondent had been taken to the hospital; that respondent was under the influence of liquor; that his speech was grumbled and incoherent (which is not surprising in view of the nature and extent of his injuries); that the daughter-in-law was also under the influence of liquor and gave the impression that she did not know what she was doing; that she accompanied the respondent to the hospital in the ambulance. On the trial she had testified that she had gone to the hospital in a police radio car. The effect of this evidence, according to appellants, would be to "nullify" the whole of Mrs. Atherley's testimony by showing that she did not know what had taken place. It is also urged that, because respondent and Mrs. Atherley did not file counter-affidavits, the truth of the averments in the Denike affidavit was admitted. Respondent's attorney filed a counter-affidavit in which he averred that, with the exercise of due diligence, the evidence of Denike could have been produced on the trial; that Denike's report of the acci-

dent had been filed with the police department on August 7, 1936, and was at all times available.

There cannot be any doubt but that the trial court acted well within its powers in denying the motion for a new trial on the ground of newly discovered evidence. In view of the testimony of respondent, Mrs. Atherley and Dr. Lennon, given at the time of trial, their failure to file counter-affidavits cannot, and should not, be held to be an admission that respondent and Mrs. Atherley were intoxicated. At most, the evidence of Denike would tend to impeach the testimony of respondent and Mrs. Atherley. It is elementary that it rests in the sound discretion of the trial court as to whether a motion for a new trial should be granted on the ground of newly discovered evidence. ██ Motions on that ground are regarded with distrust and disfavor. (See cases collected and commented on in 20 Cal. Jur., p. 80 et seq., sec. 57 et seq.) In the instant case the facts to which Denike would testify, are, as to respondent, cumulative of the testimony of Dr. Sumner. As to Mrs. Atherley, the proffered testimony merely tends to impair her credibility and to contradict her testimony. The order of the trial court denying a motion for a new trial on the ground of newly discovered testimony will not be disturbed by an appellate court where the proffered newly discovered evidence is cumulative, or merely affects the credibility or contradicts the testimony of a witness. (See cases collected and commented on in 20 Cal. Jur., p. 81, sec. 58.) Nor do we think there was a sufficient showing of due diligence. (See cases collected and commented on in 20 Cal. Jur., p. 84, sec. 59.)

██ There is only one other matter necessary to consider. Respondent secured a judgment not only against the Market Street Railway Company and the conductor, Chester Von Boden, but also against John Berry, the motorman. It is urged on his behalf that there is no evidence that he was guilty of negligence, since he was on the front end of the streetcar and had nothing to do with the conductor giving the signal to start prematurely. Respondent does not contend that there is any evidence to support the judgment against the motorman. The judgment as to him will have to be reversed.

After reading the record and considering the law applicable to the facts, we are of the opinion that there is no merit in any of the contentions urged, except as to appellant Berry.

The judgment as to defendants Market Street Railway Company and Chester Von Boden is affirmed; the judgment as to John Berry is reversed; respondent to recover his costs on this appeal.

Knight, J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 7, 1941.